IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MELVIN MALDONADO,

        Plaintiff,

v.                                          No. CIV 05-303 JH/ACT

BIO-MEDICAL APPLICATIONS
OF NEW MEXICO, INC., d/b/a CENTRAL
NEW MEXICO KIDNEY CENTER,

        Defendant.

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER is before the Court on Plaintiff Melvin Maldonado's ("Plaintiff's") Motion to Compel Production of Documents, filed September 30, 2005. [Doc. No. 20.] The motion is fully briefed and ready for resolution. After thorough consideration of the pleadings, attachments and pertinent law, the Court grants Plaintiff's motion and requires Defendant Central New Mexico Kidney Center ("Defendant") to produce the document at issue. The Court's reasoning follows.

### Background

Plaintiff brings a claim of medical malpractice against Defendant, alleging that he was injured by Defendant during dialysis treatment and pre/post dialysis care. [Doc. No. 1, Complaint, ¶¶ 4, 5]. Plaintiff further alleges that because of Defendant's negligence, multiple additional surgeries,

1

including removal of a permanent fistula and replacement of multiple temporary catheters, may be required.  Id.  Defendant generally denies the allegations.

## **Plaintiff's Motion to Compel**

The present discovery dispute involves a single document that Defendant identifies as a "Clinical Variance Report."  [Doc. No. 20, Ex. 2, p. 3.] [1]  Plaintiff alleges that on November 26, 2003, Riva M. Martinez[2] committed an error while inserting cannulation needles in Plaintiff's fistula for dialysis. [Doc. No. 20, p. 2.]  During her deposition in response to Plaintiff's counsel's questions, Ms. Martinez testified as follows:

> Q. What documents did you review in preparing for your deposition.
>
> A. My incident report.
>
> Q. Okay.  Where is that?
>
> A. I'm assuming the lawyer has it.
>
> Q. When did you prepare that?
>
> A. The day that it happened.
>
> Q. Okay.  What did you do in preparing that?
>
> A. I wrote down what I thought had happened that day, and that's just pretty much it, and then gave it to the DON at the time.
>
> Q. Who was that?

---

[1]Defendant has stated that the Report is dated December 17, 2003, while Riva Martinez testified in her deposition that she completed the report on November 26, 2003.  Ms. Martinez further testified that she hand wrote the Report while Defendant's counsel stated that the Report in his possession is typewritten *See* [Doc. No. 20, p. 3].  The Court will merely refer to the "Clinical Variance Report" hereafter.

[2]According to Plaintiff, Ms. Martinez' job title is Patient Care Technician.  See [Doc. No. 20, Ex. 6, p. 4].  It appears that she was a medical technician who was preparing Plaintiff for a dialysis procedure.  *See*  [Doc. No. 20, Ex. 6, p. 6.]

2

A.　　Gilbert Lujan.³

Q.　　What did Gilbert Lujan do with it?

A.　　I'm not sure. I just gave it to him. He said, "Thank you." And I left his office.

Q.　　What did you write down?

A.　　That we had had an incident and he thought I had stuck him in the wrong spot, and that he also said I didn't clean him.

Q.　　Who said that?

A.　　Melvin Maldonado.

Q.　　How did it come about that you wrote this report?

A.　　Any time you have any kind of incident where a [the attached deposition pages do not continue at this point].

[Doc. No. 20, Ex. 6.]

In response to defense counsel's questions, Ms. Martinez testified that her "incident report" was handwritten but that the document she reviewed before her deposition was a typed document. Id. Ms. Martinez further testified that she believed she had noted in her report how she cleaned the pertinent area on Plaintiff. She also stated that her November 26, 2003 handwritten report helped refresh her recollections with respect to preparation for her deposition.⁴ Id.

---

³Mr. Lujan is apparently director of nursing ("DON").

⁴At the conclusion of Ms. Martinez' deposition, Plaintiff noted that he had requested Ms. Martinez's incident report and had not yet received it. Plaintiff added that he might need to re-take Ms. Martinez's deposition if the Court ordered production of the report. Defense counsel was agreeable. [Doc. No. 20, Ex. 6, p. 84.]

In discovery requests to Defendant, Plaintiff requested "copies of any and all statements, whether written or oral, which were given by any individual with knowledge of fact or inferences regarding the incident which is subject to Plaintiff's Complaint." [Doc. No. 20, Ex. 2, RFP No. 7.] Defendant objected to the request on grounds of "attorney-client privilege, work product or trial preparation doctrine, peer review privilege, quality assurance privilege, self-evaluative privilege or other statutory or regulatory privileges." [Id.] Without waiving the objections, Defendant stated there was only one responsive document, a Clinical Variance Report, dated December 17, 2003, reported by Riva Martinez. Defendant argued that the report was protected by the "New Mexico peer review statute, and the above-referenced law and statutory privileges."[5]

In Plaintiff's opening brief, he provided thorough arguments regarding why each of the asserted privileges did not apply. Defendant's response argued only that the New Mexico Medical Review Organization Immunity Act, NMSA §§ 41-9-1, *et seq.* ("ROIA") protected the report from disclosure.[6] In so arguing, Defendant did not attach any affidavit or deposition testimony of its own. It primarily observed the statutory language of ROIA and stated that it was a health care provider as defined by the statute. Defendant further argued that the Clinical Variance Report was generated for a variety of purposes defined under the Act, that such reports "are integral to the Defendant's development of continuous quality improvement efforts", that the reports "give facility management

---

[5]In the attempt to avoid briefing this matter, Plaintiff wrote defense counsel a lengthy letter explaining its position with respect to a number of Defendant's responses and objections to discovery requests. [Doc. No. 20, Ex. 3.] Defendant requested additional time to respond to the letter stating that he hoped to be able to provide a satisfactory response to the issues raised. [Doc. No. 20, Ex. 4.] Defendant then provided a single supplemental response to an unrelated document request. [Doc. No. 20, Ex. 5.]

[6]Defendant should have notified Plaintiff that he intended to proceed under only one privilege, rather than the entire "laundry list" of evidentiary privileges he originally raised. This would have simplified briefing, expedited resolution, and reduced costs.

and staff a mechanism to review and quantify the broad spectrum of occurrences which can impact the quality of patient care . . . . ," and that they "are also used to alert the corporate legal and risk management departments in situations in which litigation may be anticipated." [Doc. No. 22, pp. 2-3].

Defendant apparently does not dispute that it has the burden of proving that the document was "generated exclusively for peer review and for no other purpose," in order to fall with ROIA's protection from discovery. Southwest Community Health Servs. v. Smith, 107 N.M. 196, 200, 755 P.2d 40, 44 (N.M. 1988). In support of its position, Defendant argues summarily that "it is clear that the subject document was, in fact, generated exclusively for peer review and for no other purpose." Without supplying any evidentiary support for this assertion, Defendant refers to a single page of Barbara Wood-Morgan's deposition testimony attached by Plaintiff to his motion. Ms. Wood-Morgan testified:

> Q:   But the report that was done by Riva, the variance report, is something that does help you, as a nurse in charge, to evaluate the patient at the time—
>
> A.   Uh-huh.
>
> Q.   – and take steps to deal with the patient's care; is that accurate?
>
> A.   Uh-huh. It's true.

[Doc. No. 20, Ex. 6.] There is no other testimony by Ms. Wood-Morgan provided regarding the report at issue. Defendant merely argues that this testimony "actually supports the defense position that the document is generated exclusively for peer review."

## Analysis

The pertinent provision of the ROIA states as follows:

5

> All data and information acquired by a review organization in the exercise of its duties and functions shall be held in confidence and shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization or in a judicial appeal from the action of a review organization. . . . Information, documents or records otherwise available from original sources shall not be immune from discovery or use in any civil action merely because they were presented during proceedings of a review organization, nor shall any person who testified before a review organization or who is a member of a review organization be prevented from testifying as to matters within his knowledge, but a witness cannot be asked about opinions formed by him as a result of the review organization's hearings.

NMSA § 41-9-5. The statute defines a "review organization" as "an organization whose membership is limited to health care providers and staff, except where otherwise provided for by state or federal law, and which is established by a health care provider which is a hospital, by one or more state or local associations of health care providers . . ., or by a professional standards review organization . . . ." NMSA § 41-9-2(E). The statute further sets forth the purposes for which a review organization might gather information relating to the care and treatment of patients.

In 1988, the New Mexico Supreme Court examined and interpreted the statutory language of the ROIA, also in relation to a discovery dispute arising from medical malpractice allegations. Southwest Community Health Services, 107 N.M. 196. The Court observed the importance and far reaching effects of the ROIA.

> The ROIA establishes a medical peer review process to promote the improvement of health care in New Mexico. Further, it recognizes that candor and objectivity in the critical evaluation of medical professionals by medical professionals is necessary for the efficacy of the review process. . . .
>
> [W]e again stress, the confidentiality created by this statute is intended to prevent disclosure in situations extending far beyond the production of evidence in civil litigation.

6

Id. at 198, 199.  The Court proceeded to explain:

> [w]hen a party invokes § 41-9-5 to immunize evidence from discovery, the ***burden rests upon that party to prove that the data or information was generated exclusively for peer review and for no other purpose***, and that opinions were formed exclusively as a result of peer review deliberations.  If the evidence was neither generated nor formed exclusively for or as a result of peer review, it shall not be immune from discovery unless it is shown to be otherwise available by the exercise of reasonable diligence.

Id. at 200 (emphasis added).

Here, the Court concludes that the report at issue is relevant under Rule 26(b) and that Defendant has not made a sufficient showing that the information contained in the report is available through another source.  The Court further finds that Defendant did not satisfy its burden in demonstrating that the report was generated only for peer review and for "no other purpose."  Defendant relies on four words of deposition testimony from Ms. Wood-Morgan that are far from conclusive as to this point.  Ms. Martinez's deposition testimony similarly does not establish that her report was generated exclusively for peer review.  Moreover, Defendant failed to present any affidavit testimony that might have supported its position.  Although Defendant argues that even if the testimony of Ms. Martinez has waived the privilege with respect to factual statements made by her, "there was no waiver wtih respect to any opinions or conclusions added by others." [Docket No. 22, p. 4.].  Defendant seems to imply that the December 17th typewritten report may contain "opinions or conclusions" by others but supplies no evidentiary support for this statement.  Indeed, Defendant did not explain the difference between the November 26th report and the December 17th report, to which it refers in its original response to the document request.  Finally, Defendant has not shown that Ms. Martinez' report was "acquired by a review organization," or that it was presented to such a

7

review organization, as that phrase is defined in the ROIA. In other words, to the extent that Defendant contends it is a review organization, there is no evidence to show that its membership "is limited to health care providers and staff," etc., even though that may be the case. *See* NMSA § 41-9-2(E); § 41-9-5. The Defendant has simply failed to meet its burden under ROIA.

## **Conclusion**

Thus, because Defendant has failed to meet its burden, the Clinical Variance Report(s) must be produced to Plaintiff. If there are indeed separate reports dated November 26th and December 17th, they both should be produced since Defendant did not satisfy its burden of demonstrating that either report was prepared exclusively for peer review. If Plaintiff needs to re-depose Ms. Martinez regarding the substance of her report(s), he may do so at a time convenient to both parties. This supplemental deposition will be limited to one hour.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel [Doc. No. 20] is GRANTED and that Defendant produce to Plaintiff the complete, unredacted Clinical Variance Report(s) no later than ten (10) days after entry of this Order.

*[signature]*
Alan C. Torgerson
United States Magistrate Judge