IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MELVIN MALDONADO,

     **Plaintiff,**

vs.              Civ. No.  05-303 JH/ACT

BIO-MEDICAL APPLICATIONS OF
NEW MEXICO, INC. d/b/a CENTRAL
NEW MEXICO KIDNEY CENTER,

     **Defendant.**

## ORDER

  This medical malpractice matter comes before the Court on three motions by Plaintiff Melvin

Maldonado ("Maldonado"): *Plaintiff's Motion for Sanctions* [Doc. No. 30], *Plaintiff's Motion to*

*Extend Deadlines and to File Supplemental Reply in Support of Motion for Partial Summary*

*Judgment as to Third Party Liability and Other Motions* [Doc. No. 48], and Plaintiff's *Motion for*

*Partial Summary Judgment As to Third Party Liability* [Doc. No. 33].

**I.  Motion for Sanctions**

  First, Maldonado seeks to impose sanctions upon Defendant Bio-Medical Applications of

New Mexico, Inc. ("Bio-Medical") for alleged discovery abuse and spoliation.  The facts relevant to

the motion are as follows.  Bio-Medical's employee, Riva Martinez, was a technician who placed

Maldonado on a dialysis machine on November 26, 2003.  There is a factual dispute regarding what

happened between Ms. Martinez and Maldonado at the dialysis clinic on that date, but the parties

agree that afterwards Ms. Martinez wrote a "clinical variance report" (a sort of incident report)

informing her supervisors of the day's events.  At her first deposition, Ms. Martinez testified that

contemporaneously with the events in question, she had written her report by hand, but that in order to prepare for the deposition she had reviewed a typed version of her report. Martinez Depo. dated Sept. 19, 2005 at pp. 81-82. Ms. Martinez testified that after she hand-wrote her original incident report, she gave it to the Director of Nursing ("DON"), and she had not seen it since. *Id*. at p. 82-83. She also said that she did not know where her handwritten original was. *Id*. at p. 82. Finally, Ms. Martinez testified that the typewritten report "is pretty much kind of what I remembered." *Id*. at p. 83. When asked if she was sure the typed and handwritten reports were the same, she responded, "No. Pretty much, because I remembered the whole incident because we had—me and Melvin had gotten along very well up until then." *Id*. When asked about what might help her remember what she wrote (as compared to the typewritten form), she said, "I don't understand how it would be different. I don't think there's any differences, other than that one is typed and clear, and my handwriting is pretty crappy." *Id*.

Maldonado reconvened Martinez' deposition on November 23, 2005, and his counsel again asked about the two different copies of the clinical variance report. At this second deposition, her testimony was different. Ms. Martinez testified that she had not reviewed the typed report before her first deposition, Martinez Depo. dated Nov. 23, 2005 at p. 4, but rather her handwritten one. *Id*. at p. 5. She testified that "the lawyer" gave her the handwritten report, though it is unclear whether she means Maldonado's lawyer or Bio-Medical's lawyer. *Id*. The remainder of her testimony on the subject showed Martinez to be very confused about what reports she had previously reviewed and who had shown them to her, *id*. at p. 5, though she did confirm that the typed report accurately reflected her handwritten report. *Id*. at p. 6. Before signing her deposition, Martinez utilized the corrections page and altered her testimony on page 5 of the deposition to state that she had reviewed

the typed report, not the handwritten report, before her first deposition. Thus, the corrections page on her second deposition was consistent with her testimony at her first deposition.

In addition, Bio-Medical's DON, Gilbert Lujan, testified at his deposition that on the day of the incident, he gave Ms. Martinez a printed form of clinical variance report, she wrote out the information, and he entered the contents into the computer. Lujan Depo. at pp. 15-16. He also stated that after he entered it on the computer, he "probably discarded [the handwritten clinical variance report]. We don't keep those things." *Id.* at p. 17. Bio-Medical also has provided the sworn affidavit of its attorney, Ben Allen, who states that he has never seen or possessed a hand-written Clinical Variance Report, and that when he met with Ms. Martinez before her first deposition, he showed her the typed report.

In his motion for sanctions, Maldonado argues that by failing to produce the handwritten report in discovery, Bio-Medical "has consistently obstructed the discovery process and has flouted a direct order of this Court."[1] As a sanction, Maldonado requests that the Court enter summary judgment in his favor on the issue of liability, award him his attorney's fees and costs for preparing his motion for sanctions, and instruct the jury that it may draw a negative inference from the Defendant's destruction of the handwritten report.

After reviewing the testimony, the Court concludes that the record reveals no evidence of misconduct by Bio-Medical or its counsel during the discovery process in this case. Instead, it appears that Ms. Martinez became confused in her deposition testimony regarding which version of the report she had looked at, which in turn led to confusion over the continued existence of her

---

[1] On November 1, 2005, Magistrate Judge Alan Torgerson ordered Bio-Medical to produce the "report(s)." At that time, the Court did not have before it either Mr. Lujan's deposition or Mr. Allen's affidavit.

handwritten report.  Based upon the record before the Court, the Court is satisfied that since the inception of this litigation neither Bio-Medical nor its counsel has possessed Ms. Martinez' handwritten report, and therefore they have not improperly refused to provide it in discovery. Accordingly, the Court will deny Maldonado's requests for monetary sanctions and summary judgment on the issue of liability.

On the other hand, Maldonado also requests that at trial the Court instruct the jury on spoliation of evidence, informing them that they may draw a negative inference from Bio-Medical's decision to destroy the original, handwritten variance report.  The testimony in the record suggests that Bio-Medical probably destroyed the original report, and that it is Bio-Medical's normal business practice to do so despite the fact that such reports appear designed to record events that have the potential to lead to litigation.  The record also suggests that it is Bio-Medical's practice to preserve the information on the handwritten variance reports by entering into the computer.  Furthermore, it is unclear at this stage whether the information on the typewritten report differs from the original. Finally, despite making a request that the Court instruct the jury on spoliation of evidence, Maldonado has not provided the Court with a proposed instruction, and therefore the Court will deny the request at this time.  Provided that Maldonado submits a proper, timely jury instruction on spoliation before trial and lays the proper foundation of evidence at trial, the Court will consider the matter again at that time.

## II.    Motion to Extend Deadlines and File a Supplemental Reply Brief

In this motion, Maldonado requests leave to file a supplemental reply brief in support of his *Motion for Partial Summary Judgment As to Third Party Liability*.  To the extent the motion requests leave to file that supplemental brief, it will be granted.  However, the Court will deny

Maldonado's request for an extension of the dispositive motion deadline.

With regard to Maldonado's request regarding an extension of the discovery deadline, the Court finds that it is appropriate to permit Maldonado to conduct limited additional discovery as follows.

No later than five days after entry of this Memorandum Opinion and Order, Maldonado may serve Bio-Medical with no more than a total of 5 written discovery requests (some combination of interrogatories, requests for production, and requests for admission) regarding its relationship with its medical director, Dr. Kundeling. Bio-Medical must respond to these written requests no later than 15 days after entry of this Memorandum Opinion and Order. Finally, Maldonado may conduct a Rule 30(b)(6) deposition of Bio-Medical, which must take place no later than July 24, 2006 and which is no longer than 30 minutes in length, regarding Bio-Medical's relationship with Dr. Kundeling. Questions on other topics will not be permitted. Furthermore, the Court fully expects both parties to participate in this limited discovery in good faith and to make a diligent effort to work out any disputes between themselves prior to seeking the assistance of the Court.

## III.    PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The undisputed material facts, viewed in the light most favorable to non-movant Bio-Medical, are as follows. On November 26, 2003, Maldonado visited Bio-Medical for a routine dialysis session. When he arrived there, Maldonado showed no signs of infection. However, while preparing him for dialysis, technician Riva Martinez committed a procedural variance. Maldonado was aware of the variance, which Ms. Martinez later documented in a written "clinical variance report." There is a factual dispute between the parties as to whether Ms. Martinez's actions caused an infection in the plaintiff. On November 29, 2003, Maldonado arrived at Bio-Medical for another dialysis session.

At that time, he displayed several symptoms of an infected fistula.  Nurse Deborah Dingwall evaluated the infection, cannulated Maldonado's fistula, and commenced dialysis.  Ms. Dingwall then notified Maldonado's treating physician, Dr. Kundeling, of the apparent infection.  Dr. Kundeling instructed Ms. Dingwall to draw blood cultures to determine if the fistula was infected and prescribed oral antibiotics for Maldonado.  However, Dr. Kundeling did not examine Maldonado, prescribe intravenous antibiotics, or request that a surgeon perform a surgical debrisement of the infected area.

Maldonado moves for partial summary judgment on Bio-Medical's affirmative defense of comparative fault in which it claims that its fault should be compared to that of a non-party, Dr. Kundeling.  As grounds for his motion, Maldonado argues that the defense of comparative fault is not available where a plaintiff suffers harm at the hands of both an original and a successive tortfeasor; rather, those two tortfeasors are jointly and severally liable for the plaintiff's damages. In this case, Maldonado argues that Bio-Medical is the original tortfeasor, while Dr. Kundeling is the successive tortfeasor who aggravated the original injury imposed by Bio-Medical.  In response, Bio-Medical contends that in the event it is found liable, it should be considered a concurrent tortfeasor with Dr. Kundeling, in which case the defense of comparative fault remains open to Bio-Medical.

"In New Mexico, the common law doctrines of contributory negligence and joint and several liability have been replaced with a system of pure comparative negligence and, with respect to concurrent tortfeasors, several liability." *Lewis ex rel. Lewis v. Samson*, 2001-NMSC-035 ¶ 32, 131 N.M. 317.  Thus, where two or more concurrent tortfeasors cause harm, fault will be apportioned among them comparatively, and no joint liability will be imposed.  *Lujan v. Healthsouth Rehabilitation Corp.*, 120 N.M. 422, 425, 902 P.2d 1025, 1028 (1995) ("New Mexico has abolished joint and several liability in cases involving concurrent tortfeasors.").

However, the New Mexico Supreme Court has enacted a different rule in the case of successive tortfeasors.  In *Lujan*, 120 N.M. 422, 902 P.2d 1025 (1995), the Supreme Court held that, with respect to an action by the injured party against the original tortfeasor, the original tortfeasor is jointly and severally liable for the entire harm to the plaintiff, including the original injury and any foreseeable enhancement of the injury by subsequent medical negligence.  *Id*. at 426-27, 902 P.2d at 1029- 30.  "When a person causes an injury to another which requires medical treatment, it is foreseeable that the treatment, whether provided properly or negligently, will cause additional harm." *Id*. at 426, 902 P.2d at 1029.  Thus, under New Mexico law, the original tortfeasor will be held jointly and severally liable for the entire harm, including the enhanced injury stemming from the foreseeable medical negligence of a successive tortfeasor.  *Lewis*, 131 N.M. at 330, ¶ 33 ("[W]e impose as 'a positive rule of decisional law' the requirement of joint and several liability upon the original tortfeasor for the original and enhanced injuries.").

Thus, Maldonado's motion for summary judgment on Bio-Medical's affirmative defense turns on the question of whether Bio-Medical and Dr. Kundeling were concurrent or successive tortfeasors. The classic successive tortfeasor scenario is one in which a careless driver or an assailant causes an original injury, which is then aggravated by a physician who fails to meet the applicable standard of care.  *See, e.g., Lujan*, 120 N.M. at 425-46 (negligent driver who caused plaintiff's broken leg and rehabilitation services provider who negligently refractured the leg held to be successive tortfeasors) *and Lewis*, 313 N.M. at 330-31 (assailant who stabbed plaintiff's decedent and physician who negligently treated the wounds found to be successive tortfeasors). These examples demonstrate clearly separate torts, though *Lujan* states that the later torts of negligent medical treatment are foreseeable as a matter of law.  120 N.M. at 426.

However, this case presents a somewhat closer question in terms of determining whether Bio-Medical and Dr. Kundeling were concurrent or successive tortfeasors.  In *Lujan*, the Supreme Court observed that:

> In defining tortfeasors as successive rather than concurrent, courts have considered several other factors that are relevant, including: 1) the identity of time and place between the acts of alleged negligence; 2) the nature of the cause of action brought against each defendant; 3) the similarity or differences in the evidence relevant to the causes of action; 4) the nature of the duties allegedly breached by each defendant; and 5) the nature of the harm or damages caused by each defendant.

120 N.M. at 426.[2]

Applying all of the above factors to this case, the Court concludes that for the purposes of this motion, Bio-Medical and Dr. Kundeling are concurrent, not successive, tortfeasors. The first factor is identity of time and place of the acts of alleged negligence.  Maldonado alleges that Bio-Medical was negligent both on November 26, 2003, when Ms. Martinez committed a procedural variance and again on November 29, 2003 when Nurse Dingwall cannulated his infected fistula before consulting a physician. He alleges that Dr. Kundeling was negligent when, also on November 29, he failed to examine Maldonado and properly treat the infection.  Though there is some separation in time between Ms. Martinez's and Dr. Kundeling's actions, it appears that Bio-Medical's alleged negligence was ongoing and that there was a close relationship in time and space between Dr. Kundeling's and Nurse Dingwall's actions, as both occurred on Bio-Medical's premises.  Therefore,

---

[2] In the Court of Appeals opinion that was reversed by the Supreme Court in *Lewis*, Judge Harris Hartz, concurring in part and dissenting in part, questioned the usefulness of these factors for distinguishing concurrent and successive tortfeasors.  1999-NMCA-145, ¶ 75, 128 N.M. 269. However, because the New Mexico Supreme Court has not rejected the factors outlined in *Lujan*, the Court will apply them here.

this factor does not weigh heavily in favor of a finding of either concurrent or successive tortfeasors.

However, the remaining factors weigh in favor of a finding that Bio-Medical and Dr. Kundeling were concurrent tortfeasors. The nature of the causes of action brought against each defendant—medical malpractice—would be identical (in the event that Maldonado had sued Dr. Kundeling). The evidence relevant to the causes of action against both Bio-Medical and Dr. Kundeling is very similar. In fact, at a trial of these claims there necessarily would be a great deal of overlap in testimony, witnesses, and exhibits. The nature of the duties allegedly breached by each defendant are virtually identical: the duty to meet the standard of care in the medical profession regarding the prevention and treatment of infection in dialysis patients. Finally, the nature of the harm or damages caused by each defendant is the same—in this case, an infection that led to the loss of Maldonado's fistula and led him to incur medical expenses and endure pain and suffering.

Maldonado cites *Haceesa v. United States*, 309 F.3d 722 (10th Cir. 2002), in which the Tenth Circuit found that the United States government, as owner and operator of a Navajo reservation hospital which failed to diagnose decedent's hantavirus, and the private hospital which later misdiagnosed decedent, were successive tortfeasors. However, *Haceesa* is distinguishable because it relies upon the "loss of chance of survival" theory. That theory may or may not be applicable here; however, neither party has presented argument or evidence on that subject upon which the Court may make a reasoned decision. Further, Maldonado relies most heavily upon a hypothetical posed by the Tenth Circuit in footnote 7 of its opinion in *Haceesa*. That footnote is not only non-binding dicta, but poses a scenario materially different from that presented here.

Accordingly, the Court concludes that, based upon the record presented on summary judgment, Bio-Medical and Dr. Kundeling are concurrent tortfeasors. The defense of comparative

negligence is available to concurrent tortfeasors, and therefore Plaintiff's motion for partial summary judgment will be denied.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion for Sanctions* [Doc. No. 30] is **DENIED**, *Plaintiff's Motion to Extend Deadlines and to File Supplemental Reply in Support of Motion for Partial Summary Judgment as to Third Party Liability and Other Motions* [Doc. No. 48] is **GRANTED IN PART AND DENIED IN PART**, and Plaintiff's *Motion for Partial Summary Judgment As to Third Party Liability* [Doc. No. 33] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**