IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MELVIN MALDONADO,

        Plaintiff,

vs.                                    Civ. No.  05-303 JH/ACT

BIO-MEDICAL APPLICATIONS OF
NEW MEXICO, INC. d/b/a CENTRAL
NEW MEXICO KIDNEY CENTER,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant's Motion for Partial Summary Judgment As to Ms. Martinez' Negligence* [Doc. No. 39].  The issue presented by the motion is whether there is a genuine issue of material fact as to whether Ms. Martinez' actions on November 26, 2003 proximately caused the infection in Plaintiff Melvin Maldonado's ("Maldonado") fistula.[1]  Because the Court concludes that there is no genuine issue of material fact on causation, the motion will be granted.

## DISCUSSION

The undisputed material facts, viewed in the light most favorable to Maldonado, are as follows.  On November 26, 2003, Maldonado visited Defendant Bio-Medical Applications of New Mexico, Inc. ("Bio-Medical") for a routine dialysis session.  When he arrived there, Maldonado showed no signs of infection.  However, while preparing him for dialysis, technician Riva Martinez

---

[1] For the purposes of this motion only, Defendant does not dispute that Ms. Martinez' actions fell below the standard of care for a medical professional preparing a patient for dialysis. Not at issue in this motion is Maldonado's claim that he suffered harm as a result of the actions of another Bio-Medical employee, Nurse Deborah Dingwall.

committed a procedural variance, and her actions fell below the applicable standard of care.   On

November 29, 2003, Maldonado arrived at Bio-Medical for another dialysis session.   At that time,

he displayed several symptoms of an infected fistula.   Nurse Deborah Dingwall evaluated the

infection, cannulated Maldonado's fistula, and commenced dialysis. Thereafter, Maldonado developed

an infection that caused him to lose his fistula, undergo various surgeries, endure pain and suffering,

and accrue significant medical expenses.

Bio-Medical asserts that there is no genuine issue of material fact on one element of

Maldonado's medical malpractice claim, proximate cause, at least as it relates to Riva Martinez'

failure to properly prepare his access site for dialysis.   At issue in this motion is the testimony of two

expert witnesses designated by Maldonado.   In support of its motion for summary judgment, Bio-

Medical points to the deposition testimony of Maldonado's designated experts, Dr. George Kaysen

and nurse Kelly Dyar, RN.   Bio-Medical contends that under New Mexico law, Maldonado must

establish causation through expert testimony.  The Court agrees. *Cervantes v. Forbis*, 73 N.M. 445,

448, 389 P.2d 210, 213 (1964) ("expert testimony is generally required to establish causal

connection.").   Bio-Medical further argues that neither of Maldonado's experts has provided

testimony to adequately support a finding of proximate cause.  The Court will address each witness

in turn.

**Dr. George Kaysen**

Maldonado retained Dr. Kaysen, a physician board certified in nephrology, to review medical

records and witness testimony in this case and to express an opinion regarding standard of care and

Maldonado's future life expectancy.  In his "expert witness affidavit" dated October 21, 2005, Dr.

Kaysen's only statement regarding causation was: "It is [] likely that the infection that was evident

on November 29, 2003 was introduced on November 26th." Defendant's Ex. 1. However, Dr.

Kaysen stopped short of saying that Ms. Martinez' actions on November 26th caused the infection

within a reasonable degree of medical probability, which is the standard under New Mexico law. *See*

*Alberts v. Schultz*, 1999-NMSC-015 ¶ 29, 126 N.M. 807. At his November 17, 2005 deposition,

Dr. Kaysen was asked, "Can you say as a matter of medical probability whether anything that Riva

Martinez did or did not do was what caused the infection?", to which he responded, "No."

Defendant's Ex. 3 at p. 17, lines 4-7. However, Dr. Kaysen did qualify this statement by stating that

the record was ambiguous as to what happened at the clinic on November 26, 2003, and that

reviewing further information could change his opinion:

> Q.    Do you believe that your investigation is otherwise complete?
>
> A.    At this point, yes. I mean, there are—were questions regarding what occurred on November the 26th. Within the constraints of the date that's present, I can render an opinion about what occurred or didn't occur on that date. **If additional information becomes available, I could change my mind**, but without—I don't need further information, if there is no other information, to come to a conclusion.
>
> Q.    What questions were not asked or answered with respect to what happened on November the 26th that you believe would be relevant or that you would like to ask and get answers to if you could?
>
> A.    Well, on November 26th, the statement by the nurse, Ms. Martinez I believe her name is, suggests that the patient complained of pain, complained of an adverse event during the dialysis treatment, and objectively the patient asked to be taken off early during that treatment. The clinical variance report that was filed stated that Ms. Martinez had cannulated him in an old spot which is a variance in practice but something which I don't think would by itself be a smoking gun. Nevertheless, he had an obvious infection in my judgment three days later which **suggests that something happened prior to the 29thth of November, and the most likely period of time was the 26th. But it's not clear at this point, reviewing the**

**information, what happened on the 26th that may have led to the infection.**

*Id.* at p. 15, line 5 - p. 16, l. 11 (emphasis added).

On February 4, 2006—after Bio-Medical filed its motion for summary judgment on causation—Dr. Kaysen prepared his "Expert Witness Rebuttal Affidavit." In that document, which is marked as Plaintiff's Ex. 1, Dr. Kaysen states that he has reviewed supplemental information, including Volume II of Riva Martinez' deposition (which was taken November 23, 2005), Defendant's responses to requests for admissions, Defendant's expert witness reports, and additional medical records for the period 1998 to 2003. Plaintiff's Ex. 1 at ¶ 1. He also stated, "I understand that Defendant has now admitted that on November 26, 2003, Mr. Maldonado showed no signs of infection prior to beginning dialysis." *Id.* at ¶ 2. Dr. Kaysen then opines,

> **The infection** suffered by Mr. Maldonado ... **was as a reasonable medical probability caused by the use of unsanitary procedures by Riva Martinez** which fell below the standard of care during his treatment on November 26, 2003. This infection was the original cause of the loss of Melvin Maldonado's AV fistula. **The basis for this opinion is that Riva Martinez applied non-sterile gauze to broken skin.** Defendant's technicians routinely place the gauze in the "burrito" using non-sterile technique providing opportunity for Staphylococcus aureus carriage by the person preparing the package to be transmitted to broken skin.

*Id.* at ¶ ¶ 3-4 (emphasis added).

Bio-Medical argues that Dr. Kaysen's most recent "Expert Witness Rebuttal Affidavit," which contradicts his prior deposition testimony on the subject of causation, is a sham affidavit and should be disregarded under the standards set forth by the Tenth Circuit Court of Appeals in *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). In *Franks*, the court observed that under some circumstances, an affidavit that contradicts the affiant's prior testimony may be disregarded on

4

summary judgment as an attempt to create a sham issues of fact.   "Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain."  *Id*.

None of these factors weighs in favor of permitting Dr. Kaysen to change his testimony in this case.  First, Maldonado does not dispute Bio-Medical's assertion that Dr. Kaysen was questioned by both his attorney and Bio-Medical's attorney at his deposition.  Therefore, Dr. Kaysen was effectively cross-examined.  Second, Dr. Kaysen's deposition testimony reflects no confusion, but rather is very clear and straightforward.

Instead of relying upon either of these factors, Dr. Kaysen indicates in his rebuttal affidavit that his altered opinion is based upon new evidence to which he did not have access at the time of his deposition.  However, the record belies this assertion.  Dr. Kaysen's rebuttal affidavit asserts that the basis for his opinion on causation is the use of unsanitary procedures by Ms. Martinez, including the application of unsterile gauze to Maldonado's broken skin and her unsterile preparation of the "burrito" package.  There is no indication in the record that any of the new evidence reviewed by Dr. Kaysen after his deposition shed any light on the procedures used by Ms. Martinez on Maldonado.  For example, those portions of Volume II of Riva Martinez' deposition provided to the Court[2] do not discuss the pre-dialysis procedures employed by Ms. Martinez on Maldonado.  Instead, they focus on Ms. Martinez' preparation of the clinical variance report.  Furthermore, in his response to the

---

[2] These are attached as exhibits to Plaintiff's Motion for Sanctions [Doc. No. 30] and Plaintiff's Reply in Support of Plaintiff's Motion for Sanctions [Doc. No. 36].

motion for summary judgment, Maldonado relies heavily on Ms. Martinez' *first* deposition—which already had taken place at the time he wrote his report and gave his deposition—to show the facts that support Dr. Kaysen's conclusion that she used unsanitary procedures; neither Maldonado nor Dr. Kaysen ever cites to the second volume of her deposition.  Similarly, neither Maldonado nor Dr. Kaysen ever explains how or why the other "new" evidence—Defendant's responses to requests for admissions, Defendant's expert witness reports, and additional medical records for the period 1998 to 2003—changed his opinion.  For example, Dr. Kaysen's states that the fact that Maldonado had a previous infection in his fistula "strongly supports a facility system failure rather than chance alone." Plaintiff's Ex. 1 at ¶  4.  But neither he nor Maldonado explains when Dr. Kaysen learned of the previous infection.  It may be that this information was contained in the additional medical records provided to Dr. Kaysen after his deposition, or it may be that he knew of the previous infection before his deposition.  Maldonado has failed to give the Court this information, and the Court declines to guess.

Perhaps because he cannot demonstrate how or why the new evidence changed Dr. Kaysen's opinion, Maldonado tries a different approach.  He argues that the rebuttal affidavit is "consistent with Dr. Kaysen's prior statements and expresses no new theories of liability, as Dr. Kaysen has at every turn pointed to breaks in sterile procedure regarding Defendant's use of gauze as a potential source of infection."  Response Br. at 4.  This is true as far as it goes, but until his recent rebuttal affidavit Dr. Kaysen has always stopped short of claiming that there is a reasonable degree of medical probability that Ms. Martinez' actions actually caused the infection.  Nothing before the Court adequately explains Dr. Kaysen's change in position.  After assessing the criteria outlined in *Franks*, the Court concludes that Dr. Kaysen's rebuttal affidavit is a sham affidavit which cannot create a

genuine issue of material fact.

**Nurse Kelly Dyar**

Alternatively, Maldonado argues that Nurse Kelly Dyar, whom he has also designated as an expert witness, has presented sufficient testimony on the issue of causation in order to create a genuine issue of material fact for trial.  It is true that Ms. Dyar expressed an opinion on causation at her deposition: "It is just my opinion that their failure to adhere to the standards of care in their own policies and procedures **in all likelihood** is where the infection originated."  Plaintiff's Ex. 4 at p. 78, lines 21-24 (emphasis added).  This opinion does not rise to the level of certainty required under New Mexico law, which requires that causation be established with a "reasonable degree of medical probability."[3]  Then, when asked if she would defer to a qualified physician for an opinion as to whether any breach of the standard of care caused Maldonado's infection, Ms. Dyar responded, "Yes, because I can't speak to causation so, yes."  *Id*. at p. 79, line 4.

In its memorandum in support of the motion for summary judgment, Bio-Medical listed several undisputed material facts as required by our Local Rules.  Among these were "Ms. Dyar is not licensed to practice medicine, and she is not qualified to give a medical opinion," "Ms. Dyar cannot give a medical opinion that Ms. Martinez' conduct on November 26, 2003 caused Plaintiff's infection," and "Ms. Dyar would have to defer to a qualified physician for an opinion that Ms. Martinez' alleged breaches of the standard of care in fact caused Plaintiff's infection."  *See*

---

[3] From the deposition testimony, it appears that Ms. Dyar did express an opinion based upon a reasonable degree of medical probability in her written expert report, from which defense counsel read aloud at her deposition. *See* Plaintiff's Ex. 4 at p. 78, lines 13-19.  However, as noted above, Ms. Dyar retreated from that position at her deposition.  *See id*. at pp. 78-79.

Defendant's Memorandum at p. 3.  In his response brief, Maldonado agreed with each of these statements.  Maldonado's response at p. 2.

As discussed above, Maldonado must come forward with expert testimony to show, within a reasonable degree of medical probability, that Ms. Martinez' actions on November 26th caused the infection.  *See Alberts v. Schultz*, 1999-NMSC-015 ¶ 29.  Both Maldonado and Ms. Dyar have admitted that Ms. Dyar's testimony does not meet that standard and that she must defer to a qualified physician who can speak to the issue of causation.  In light of these admissions, the Court concludes that Ms. Dyar's testimony does not create a genuine issue of material fact on causation.

**Destruction of the Clinical Variance Report**

Maldonado's final argument is that Bio-Medical's destruction of Ms. Martinez' original, handwritten clinical variance report regarding this incident creates a genuine issue of material fact on causation.  The Court disagrees. The testimony in the record suggests that Bio-Medical probably destroyed the original report, and that it is Bio-Medical's normal business practice to do so despite the fact that such reports appear designed to record events that have the potential to lead to litigation. However, the record also suggests that it is Bio-Medical's practice to preserve the information on the handwritten variance reports by entering that information into the computer, and Ms. Martinez has testified that the typewritten report accurately portrays her handwritten report.  *See Memorandum Opinion and Order* [Doc. No. 53] entered June 23, 2006 at p.4.  Finally, Maldonado has access not only to the typewritten version of the report, but also to the testimony of the only two persons present for the events described in the report: Maldonado and Ms. Martinez.  Thus, the Court finds that the absence of the original, handwritten report is not enough to create a genuine issue of fact on causation, when in fact Maldonado has access to the evidence contained therein in several other

forms.

       **IT IS THEREFORE ORDERED** that *Defendant's Motion for Partial Summary Judgment as to Ms. Martinez' Negligence* [Doc. No. 39] is **GRANTED**.


                                          **UNITED STATES DISTRICT JUDGE**